UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NANCY S. HADDAD,

        Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

18-CV-0929-MJR
DECISION AND ORDER



As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018, Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). (Dkt. No. 17)

Plaintiff Nancy Suzanne Haddad ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 11) is denied, and defendant's motion (Dkt. No. 13) is granted.

## BACKGROUND[1]

Plaintiff filed the instant applications for DIB and SSI on January 15, 2015, alleging disability as of August 12, 2014, due to bipolar disorder, depression, attention deficit hyperactive disorder ("ADHD"), post-traumatic stress disorder ("PTSD), obsessive compulsive disorder ("OCD"), and anxiety. (Tr. 70-71, 165-70, 192)[2] The State agency denied initially her claims. (Tr. 74-88) Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"), and appeared with counsel for a video hearing before ALJ Benjamin Chaykin on August 28, 2017. (Tr. 31-55, 90-94) On October 27, 2017, the ALJ issued an unfavorable decision finding plaintiff not disabled for a closed period from August 12, 2014 through January 16, 2017. (Tr. 10-25) The Appeals Council denied review on June 22, 2018 (Tr. 1-6), and this timely action followed. (Dkt. No. 1)

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v.*

---

[1] The Court presumes the parties' familiarity with plaintiff's medical history, which is discussed at length in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[2] Citations to "Tr.___" refer to the pages of the administrative transcript. (Dkt. No. 5)

2

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the

3

claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant

4

does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

5

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required sequential analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 12, 2014. (Tr. 15) At step two, the ALJ found that plaintiff had the following medically determinable impairments: affective disorder, anxiety disorder, PTSD, OCD, ADHD, asthma, obesity, right knee degenerative joint disease, substance abuse disorder (marijuana), hallux valgus, and hand numbness. (Tr. 16) The ALJ further found that plaintiff did not have an impairment or combination of impairment that had significantly limited (or was expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months. (Tr. 16-21) Accordingly, the ALJ ended his analysis at step two. (Tr. 21)

IV. *Plaintiff's Challenges*

A. **Erroneous Credibility Determination**[3]

Plaintiff first argues that the ALJ erred in finding her not fully credible as to the extent of her alleged limitations. (Dkt. No. 11-1 at 7-11) Specifically, she claims that the ALJ improperly relied upon the objective medical evidence and plaintiff's return to work in January of 2017 in making this determination. (*Id.*)

---

[3] Social Security Ruling ("SSR") 16-3p eliminated the use of the term "credibility" from the agency's sub-regulatory policy, and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." *Id.* The relevant regulations, however, remain unchanged.

6

Under the pertinent regulations, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability. However, if an individual alleges impairment-related symptoms, we must evaluate those symptoms using a two-step process set forth in our regulations." SSR 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). The two-step process involves: (1) determining whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms; and (2) evaluating the intensity and persistence of an individual's symptoms, and determining the extent to which those symptoms limits his or her ability to perform work-related activity. *Id.* With respect to the second step, considering the intensity, persistence, and limiting effects of an individual's symptoms, an ALJ will "examine the entire case record, including the objective medical evidence, an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*; *see also Hughes v. Colvin*, No. 15-CV-181, 2017 WL 1088259, at *4 (W.D.N.Y. Mar. 23, 2017) (observing updated guidance in disability claims and discussing SSR 16-3p).

In this case the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the record evidence. The ALJ concluded that plaintiff's "statements have been found to affect [her] ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (Tr. 17) Contrary

7

to plaintiff's assertions, the ALJ properly assessed the consistency of her subjective complaints in accordance with the regulatory framework.

Where, as here, the symptoms suggest a greater restriction of function than can be demonstrated by objective evidence alone (medical signs and laboratory findings), the Commissioner considers other evidence, such as: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of her symptoms; (3) precipitating and aggravating factors; and (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment other than medication which the claimant uses; (6) any other measures used to relieve pain or other symptoms; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain and other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304 *7-8. An ALJ's failure to explicitly address each of the credibility factors in the decision does not warrant a remand where the bases for the ALJ's decision can be gleaned from the record. *See Cichocki v. Astrue*, 534 Fed. Appx. 71, 76 (2d Cir. 2013) (summary order).

The ALJ in this case engaged in a detailed discussion of plaintiff's alleged limitations. (Tr. 16-19) He first considered plaintiff's treatment. (Tr. 17-18) The ALJ observed that plaintiff was seen by several mental health providers in 2014, whose treatment notes reveal that mental status examinations were mostly unremarkable, and that her medications were helpful. (*Id.*) In April, 2014, she was discharged from Horizon Health Services for failure to follow up. (*Id., see also* Tr. 435) At the time of the consultative examination on April 28, 2015, plaintiff had no current mental health treatment other than medication management. (Tr. 17, 349-52) Her mental status examination was normal/unremarkable, with fair insight and judgment. The consulting

psychiatrist diagnosed plaintiff with attention deficit hyperactivity disorder, controlled; bipolar II disorder, controlled; cannabis dependence/abuse, in sustained remission; rule out cocaine dependence/abuse. (*Id.*)

The ALJ also considered the effectiveness of plaintiff's treatment. The ALJ noted that plaintiff's statement that she felt that her medications were helpful, and that she did not feel the same when she was off them. (Tr. 18, 435) Between October, 2014, and January, 2015, plaintiff's ADHD was controlled on medication, she stated that Seroquel was working well, and reported feeling better on medication. (Tr. 18, 283, 322, 331)

With regard to plaintiff's daily activities, the ALJ noted that plaintiff testified that she lived with her 9-year old daughter, although there was a time where her daughter stayed with her aunt and uncle. (Tr. 17, 37-38) Plaintiff testified that she returned to work in January of 2017, which, the ALJ stated, "indicates that the claimant's symptoms are manageable with treatment, and did not cause severe impairment in functioning during the relevant period." (Tr. 19, 39) In addition, the ALJ considered plaintiff's reported activities of taking care of her boyfriend's dog, caring for her daughter (preparing dinner, assisting with homework), driving, grocery shopping one to two times per month, and attending doctor's appointments monthly. Plaintiff reported being able to go out alone. (Tr. 20) The regulations provide that the ALJ may consider a claimant's daily activities and the extent to which there are conflicts between a claimant's statements and the rest of the evidence in assessing the claimant's subjective complaints. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see Lamorey v. Barnhart*, 158 Fed. Appx. 361, 363 (2d Cir. 2006) ("[S]ubstantial evidence of routine activities" properly found to be inconsistent with claims of total disability).

9

Plaintiff contends that the ALJ should not have considered plaintiff's return to work in January of 2017. (Dkt. No. 11-1 at 10) However, plaintiff's ability to return to work was considered in addition to her capacity to perform daily activities, unremarkable examination results, treatment history, and management of her symptoms with medication, and not in isolation as she suggests. These factors collectively support the ALJ's determination. *See, e.g., Selimaj v. Comm'r of Soc. Sec.*, No. 17CIV3389, 2018 WL 8608356, at *10 (S.D.N.Y. May 4, 2018), *report and recommendation adopted sub nom. Selimaj v. Berryhill*, No. 17-CV-3389, 2019 WL 1417050 (S.D.N.Y. Mar. 29, 2019) (credibility determination supported by substantial evidence where "the ALJ did not consider Plaintiff's daily activities in isolation when making her credibility determination, instead, the ALJ considered this and several other factors collectively, including the objective medical evidence and Plaintiff's conservative treatment, before determining that the weight of the evidence established that Plaintiff had a greater sustained capacity than alleged.").

### B. Omission of GAF Score

Plaintiff next asserts that it was improper for the ALJ to make the severity determination without explicitly discussing the GAF scores of 50 repeatedly assessed by a treating provider, Nurse Practitioner Angela Magill.[4] (Dkt. No. 11-1 at 11-12; *see also* Tr. 320, 324, 327, 331)

Plaintiff acknowledges that "GAF scores were removed from the DSM-V diagnostic criteria all together. Further, the Commissioner has stated there is no direct correlation

---

[4] A Global Assessment of Functioning ("GAF") score of 41-50 denotes serious symptoms or any serious impairment in social, occupational or school functioning. *See* Diagnostic and Statistical Manual of Mental Disorders ("DSM"), 27-34 (4th ed., text rev. 2000).

10

between GAF scores and the severity of a claimant's mental health impairments under their guidelines . . . . Additionally, numerous courts have recognized that they are only snapshots of a claimant's functioning." (Dkt. No. 11-1 at 11) Instead, plaintiff urges the Court to find that consideration of her GAF was "relevant" to the severity analysis. (*Id.* at 12)

It is well-settled that "GAF scores—in and of themselves—do not demonstrate that an impairment significantly interferes with a claimant's ability to work." See *Carrigan v. Astrue*, No. 10-CV-303, 2011 WL 4372651, at *6, (D. Vt. Aug. 26, 2011), *report & rec. adopted*, 2011 WL 4372494 (Sep. 19, 2011). Indeed, a GAF score is only a "snapshot" of estimated functioning at the time the score was assessed. *Trombley v. Colvin*, No. 15-CV-0567, 2016 WL 5394723, at *14 (N.D.N.Y. Sept. 27, 2013); *see also Carton v. Colvin*, No. 13-CV-379, 2014 WL 108597, at *15 (D. Conn. Jan. 4, 2014) (ALJ erred in relying on GAF score as indicative of the severity of the claimant's mental impairment).

As plaintiff concedes, the Social Security Administration ("SSA") has also explained that the GAF scale does not correlate with the severity requirements in the Commissioner's regulations. See *Corporan v. Comm'r of Soc. Sec.*, No. 12 CV 6704, 2015 WL 321832, at *12, n.9 (S.D.N.Y. Jan. 23, 2015) ("In addition, before the DSM-V abandoned the GAF scale, the SSA declined to endorse GAF scores for 'use in the Social Security and SSI disability programs' because GAF scores have no 'direct correlation to the severity requirements in [the SSA's] mental disorders listings.'").

Notwithstanding the unreliability of GAF scores in general, the Court briefly addresses plaintiff's argument that the ALJ erred in failing to explicitly discuss them.

11

First, the fact that the ALJ did not mention the GAF scores does not mean that he did not consider them, particularly since the ALJ discussed NP Magill's records (Ex. 3F), which contained the scores. (Tr. 18, 318-45) *See Zabala v. Astrue*, No. 5-CV-4483, 2008 WL 136356, at *4 (S.D.N.Y. Jan.14, 2008) (internal quotation marks and citations omitted) ("[T]he ALJ is not required to reconcile explicitly every conflicting shred of medical testimony. Nor is the ALJ required to mention or discuss every single piece of evidence in the record."). Further, courts in this Circuit have routinely held that the absence of the GAF score from the ALJ's discussion, on its own, does not constitute reversible error. *See Schneider v. Colvin*, No. 13-CV-0790, 2014 WL 4269083, at *4 (D. Conn. Aug. 29, 2014) (collecting cases holding that an ALJ's failure to consider a GAF score is not reversible error).

Second, the ALJ observed that NP Magill's assessments included mostly normal examination findings, except for depressed mood. Specifically, plaintiff had intact attention, memory, insight/judgment, thoughts and behaviors. (Tr. 18 [citing Ex. 3F], *see* Tr. 320, 324, 331, 344) The consultative examination was likewise unremarkable. (Tr. 17, 20 [citing Ex. 5F], *see* Tr. 349-52) There is therefore no other evidence or opinion of record interpreting or supporting plaintiff's GAF score, which limits its value with respect to the severity analysis. *See Martin v. Berryhill*, No. 17-CV-0267, 2018 WL 3439867, at *5 (W.D.N.Y. July 17, 2018) ("No other clinical evidence in the record supports Plaintiff's GAF score of 55 . . . and the ALJ was therefore not required to include that score in the ALJ's step two analysis."); *see also Mainella v. Colvin*, No. 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014) ("There are other problems: the GAF score is not

designed to predict outcomes, and the scores are so general that they are not useful without additional supporting description and detail.") (internal citations omitted).

The ALJ explained in detail why he did not find plaintiff's mental impairments to be severe. (Tr. 16-20) Notably, plaintiff does not challenge the ALJ's severity determination on a substantial evidence basis, but rather appears to argue that the GAF score would constitute substantial evidence to support a finding sufficient to pass step two of the sequential analysis. Under these circumstances, the Court need not disturb the ALJ's finding. See Kami B. v. Saul, No. 5:18-CV-1497, 2020 WL 247279, at *4 (N.D.N.Y. Jan. 16, 2020) (reviewing court will not reweigh the evidence that was before the ALJ).

The Court therefore finds that the ALJ's decision was free of legal error and supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied, and defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 13) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: February 7, 2020
Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge